KATHY J. HUANG (SBN 240677)
kathy.huang@alston.com
RACHEL E. K. LOWE (SBN 246361)
rachel.lowe@alston.com
SAMANTHA K. BURDICK (SBN 329952)
sam.burdick@alston.com
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, California 90071
Telephone:   (213) 576-1000
Facsimile:    (213) 576-1100

Attorneys for Defendants,
LIBERTY MEDIA CORPORATION;
FORMULA ONE GROUP; and FORMULA
ONE DIGITAL MEDIA LIMITED

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved,<br><br>        Plaintiff,<br><br>    v.<br><br>LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL MEDIA LIMITED; and DOES 1 to 50, inclusive<br><br>        Defendants. | Case No.   **'23 CV 0475 LAB  MSB**<br><br>State Case No.: 37-2022-00044468-CU-MC-CTL<br><br>**DEFENDANTS LIBERTY MEDIA CORPORATION, FORMULA ONE GROUP, AND FORMULA ONE DIGITAL MEDIA LIMITED'S NOTICE OF REMOVAL**<br><br>Filing Date: November 3, 2022 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants Liberty Media Corporation, Formula One Group, and Formula One Digital Media Limited ("Defendants") hereby remove the above-captioned case, entitled *Trevor Davenport v. Liberty Media Corporation, et al.*, originally filed in the Superior Court of the State of California, County of San Diego and assigned Case No. 37-2022-00044468-CU-MC-CTL (the "State Court Action") to this Court under 28 U.S.C. §§ 1332, 1446, and 1453, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"). The grounds for removal are set out below:

## I.   BACKGROUND

1.   On November 3, 2022, Plaintiff Trevor Davenport ("Plaintiff") filed the State Court Action, alleging putative class action claims for (1) violation of the California unfair competition law, Business & Professions Code §§ 17200, *et seq.*; (2) violation of the California false advertising law, Business & Professions Code §§ 17500, *et seq.*; (3) violation of the California Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.*; (4) conversion; and (5) unjust enrichment. On behalf of a putative class of California purchasers, Plaintiff alleged that Defendants' TV streaming service subscriptions "fail to provide clear and conspicuous disclosures mandated by California law and fail to provide a clear mechanism by which consumers may cancel their subscriptions." Ex. A to this Notice of Removal (Complaint, ¶ 3). On March 14, 2023, Defendants accepted service of the Summons and Complaint by email. Decl. of Kathy Huang ("Huang Decl.") ¶ 2.

Defendants deny that there are plausible allegations that a reasonable consumer is misled by the conduct alleged in the Complaint. At this time, however, the relevant inquiry is whether this Court has jurisdiction over this matter, which it plainly does pursuant to CAFA.

## II.    THIS COURT HAS JURISDICTION UNDER CAFA

Defendants remove the State Court Action pursuant to CAFA, codified under 28 U.S.C. § 1332, subsection (d).  In his Complaint, Plaintiff seeks to represent a California class and alleges facts supporting that the CAFA requirements for federal jurisdiction have been met.  Though filed in state court, Plaintiff's Complaint alleges facts sufficient to support that this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005.  Signed into law on February 18, 2005, CAFA significantly expanded federal subject matter and removal jurisdiction over class actions.  CAFA vests federal courts with original jurisdiction for class actions where the parties are minimally diverse and the amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d).

CAFA's requirements are satisfied here.

### A. Class Action.

The State Court Action is a class action as defined by CAFA.  According to CAFA:

> [T]he term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action. . . .

28 U.S.C. § 1332(d)(1)(B).

Plaintiff brings claims on behalf of himself and a proposed class of "[a]ll persons in California who, within the applicable statute of limitations period, purchased Defendants' subscription service for F1 TV and were charged a fee to renew their subscription."  Ex. A. (Complaint, ¶ 49).  The State Court Action therefore meets the definition of a "class action" under CAFA.

### B. Removal Under CAFA.

CAFA provides that a class action brought against a non-governmental entity may be removed if: (1) the number of proposed class members is not less than 100 (28 U.S.C. § 1332(d)(5)(B)); (2) any member of the proposed plaintiff class is a citizen of

a state different from any defendant (*id.* at (d)(2)); and (3) the aggregate amount in controversy exceeds $5 million, excluding interests and costs. *Id.*; *see also* § 28 U.S.C. § 1453(b). Each of these requirements are met here.

### 1. The Number of Proposed Class Members Is At Least 100.

This requirement is satisfied because Plaintiff alleges that there are "at least 100 [class] members." Ex. A (Complaint, ¶ 54).

### 2. Diversity of Citizenship Under CAFA.

"[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 1800 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). "Minimal diversity" is met when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

The parties are minimally diverse. Plaintiff alleges that he is a citizen of California (Ex. A, Complaint, ¶ 10) and that Defendants are citizens of other states or, in the case of one defendant, the U.K. No defendant is alleged to be a citizen of California.

A corporation is a citizen of "every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *The Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (for diversity jurisdiction, "principal place of business" refers to the "nerve center" of the corporation which is where "a corporation's officers direct, control, and coordinate the corporation's activities").

First, Plaintiff specifically alleges that Defendant Liberty Media Corporation "is a Delaware corporation[.]" *Id.* ¶ 11. Liberty Media Corporation's principal place of business is in Colorado. *See* Huang Decl. ¶ 3, Ex. 1.

Second, Plaintiff alleges that Defendant Formula One Group is "a wholly owned subsidiary of Defendant Liberty Media Corporation." Ex. A ¶ 12; *see* Huang Decl. ¶ 5. Formula One Group refers to a tracking stock. It is not a corporate entity. Huang Decl. ¶ 4.

Third and finally, Defendant Formula One Digital Media Limited is alleged to "also [be] owned by Defendant Liberty Media Corporation" and is a private limited company incorporated in England and headquartered in London, England.   Ex. A (Complaint, ¶ 13); *see* Huang Decl. ¶ 5, Ex. 2.

Because at least one member of the proposed class "is a citizen of a State different from . . . [D]efendant" (28 U.S.C. § 1332(d)(2)(A)), CAFA's diversity of citizenship requirement is satisfied.  Moreover, the exceptions listed in 28 U.S.C. § 1332(d)(4)(A)–(B) do not apply, because no defendant is a citizen of California.

### 3. <u>Amount in Controversy.</u>

CAFA's third requirement—that the aggregate amount in controversy, exclusive of interest and costs, exceeds $5 million—is also satisfied.  28 U.S.C. § 1332(d)(2). Although Defendants maintain that the allegations in the Complaint lack merit and that Defendants have not injured Plaintiff or any putative class member, the alleged amount in controversy here exceeds $5 million.

As the Supreme Court has explained, a removing defendant need only *plausibly allege* that the amount in controversy exceeds CAFA's threshold: "[A]s specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S.Ct. 547, 554, 190 L.Ed.2d 495, 504 (2014); *see also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 U.S. Dist. LEXIS 123455, at *13 (N.D. Cal. Sep. 12, 2016) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's Complaint, not what a defendant will actually owe.") (citations omitted); *Nguyen v. Ericsson, Inc.*, 2018 WL 2836076 (N.D. Cal. June 11, 2018).

Plaintiff's allegations demonstrate that the amount in controversy is satisfied. Specifically, Plaintiff defines the putative class as "[a]ll persons in California who, within the applicable statute of limitations period, purchased Defendants' subscription service for F1 TV and were charged a fee to renew their subscription." (Ex. A,

Complaint, ¶ 49). He further alleges that "Formula 1 is one of the most watched sports in the world, averaging 1.4 million viewers per race" (Ex. A, Complaint, ¶ 2), with 23 races in 21 countries across five continents" each year. Ex. A (Complaint, ¶ 1). Plaintiff claims that the cost of this streaming service is "$9.99 per month for 'F1 TV Pro' or $2.99 per month for 'F1 TV Access'" or "annual charges . . . [of] $79.99 and $26.99, respectively." Ex. A (Complaint, ¶ 3). For his FAL claim, Plaintiff also seeks "restitution of **all amounts** that Defendant charged for any membership during the four years preceding the filing of [the] Complaint. Ex. A (Complaint, ¶ 47) (emphasis added). For his UCL claim, Plaintiff seeks "restitution of **all amounts** received" in connection with the alleged unfair competition.

Per these allegations, Plaintiff seeks a full refund of all subscription fees. Over the four-year statutory period preceding the filing of the lawsuit to date, California residents have spent over $5 million on F1 TV subscriptions, thereby satisfying the minimum amount in controversy.

Further, the above analysis does not include attorney's fees, which Plaintiff seeks (Ex. A, Complaint, Prayer for Relief ¶¶ 4, 8) and which must be included in the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (where "the law entitles [a putative class plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy"). Assuming for the sake of this removal only that this Court were to apply a 25% common fund benchmark if Plaintiff were somehow successful, Plaintiff's attorney's fees would increase the amount in controversy to well over the threshold $5 million. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

Finally, Plaintiff seeks injunctive relief for the alleged violation of the CLRA. Ex. A, ¶ 82. Any injunctive relief—whether in the form of a marketing change or other consumer notice procedure—for all TV subscription services sold to consumers

throughout California would be a costly endeavor, estimated in the hundreds of thousands of dollars, if not more.

The alleged amount at issue in Plaintiff's Complaint plainly exceeds the jurisdictional minimum under CAFA.

## III.  DEFENDANTS TIMELY FILED THEIR NOTICE OF REMOVAL AND SATISFIED ALL PROCEDURAL REQUIREMENTS

### A. This Notice of Removal is Timely Filed.

This notice of removal is timely pursuant to 28 U.S.C. §§ 1446(b) and 1453(b), because it is filed within thirty days after service of the Complaint on Defendants. Here, Defendants accepted service of the Complaint via email on March 14, 2023. Huang Decl. ¶ 2. Therefore, this Notice of Removal, filed within 30 days of service—is timely filed under 28 U.S.C. §1446(b).

### B. Defendant Has Satisfied all Procedural Requirements.

Venue is proper. Plaintiff filed this action in the Superior Court of the State of California, County of San Diego. Accordingly, this action is properly removed to this Court, which embraces San Diego County within its jurisdiction. 28 U.S.C. §§ 1441(a), 1446(a).

Additionally, Defendants are the only defendants that Plaintiff has served. The Doe Defendants have not been named or served and therefore do not need to consent to removal. *See Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002).

Finally, Defendants provided proper notice. Section 1446(a) requires a removing party to provide this Court with a copy of all "process, pleadings and orders" served on it in the State Court Action. True and correct copies of these documents, which are attached to this removal, are listed below:

- Complaint (Exhibit A)
- Summons to Defendant & Civil Cover Sheet (Exhibit B)
- Other materials relating to case management conference (Exhibit C)

1    Pursuant to 28 U.S.C. §1446, subsection (d), Defendants are filing a copy of the

2    Notice of Removal with the Clerk of San Diego County Superior Court and serving

3    Plaintiff with the same. A copy of the Notice to the Superior Court (which we are

4    serving on Plaintiff), without exhibits, is attached hereto as Exhibit D.

5    **IV.    CONCLUSION**

6    Plaintiff's allegations demonstrate that CAFA's requirements have been met,

7    including that (1) the proposed class contains at least 100 members, (2) Plaintiff and

8    each of the proposed California class members are citizens of a state different than

9    Defendants' states of citizenship and no other CAFA exceptions apply, (3) the aggregate

10    amount in controversy exceeds $5 million, and (4) the procedural requirements under

11    28 U.S.C. § 1446 are met. For these reasons, this action is properly removed to this

12    Court.

13

14    DATED:  March 15, 2023          **ALSTON & BIRD LLP**

15

16                                    By:   */s/ Kathy J. Huang*
17                                         Kathy J. Huang
                                           Rachel E. K. Lowe
18                                         Samantha K. Burdick
                                           Attorneys for Defendants,
19                                         LIBERTY MEDIA CORPORATION;
                                           FORMULA ONE GROUP; and FORMULA
20                                         ONE DIGITAL MEDIA LIMITED

21

22

23

24

25

26

27

28

# EXHIBIT A

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
mike@crosnerlegal.com
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

Attorneys for Plaintiff

[Additional Counsel Appear on Signature Page]

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**11/03/2022** at 10:21:18 PM
Clerk of the Superior Court
By Gabriel Lopez,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved,<br><br>      Plaintiff,<br><br>v.<br><br>LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL MEDIA LIMITED; and DOES 1 to 50, inclusive,<br><br>      Defendants. | Case No.:  37-2022-00044468-CU-MC-CTL<br><br>**CLASS ACTION COMPLAINT**<br><br>1) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW [Bus. & Prof. Code §§ 17200, *et seq.*]<br><br>2) VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW [Bus. & Prof. Code §§ 17500, et seq.]<br><br>3) VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT [Civ. Code §§ 1750, *et seq.*]<br><br>4) CONVERSION<br><br>5) UNJUST ENRICHMENT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Trevor Davenport ("Plaintiff"), individually, and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this class action complaint against Defendants Liberty Media Corporation, Formula One Group, and Formula One Digital Media Limited ("Defendants" of "Formula One") and alleges as follows:

## INTRODUCTION

1.     Defendants offer an online streaming program called "F1 Live and On-Demand" which allows their customers to stream the popular international series of auto races called "Formula One" or "F1." Formula 1 is the highest class of international auto racing for open-wheel single-seater formula racing cars and is sanctioned by the Fédération Internationale de l'Automobile ("FIA"). The Formula One World Championship is an annual, approximately nine-month-long, motor race-based competition in which teams compete for the Constructors' Championship and drivers compete for the Drivers' Championship. Formula 1 racing began in 1950 and is the world's most prestigious motor racing competition, as well as the world's most popular annual sporting series: "The 2022 FIA Formula One World Championship™ runs from March to November and spans 23 races in 21 countries across five continents."[1]

2.     Formula 1 is one of the most watched sports in the world, averaging 1.4 million viewers per race. Defendants capitalize on the sport's popularity by offering a TV streaming subscription service which allows customers to watch "Every F1 race live and on demand. With exclusive access to on-board cameras, team radio and live timing." Unbeknownst to consumers, this service is automatically renewed, charging their bank accounts and credit/debit cards without their knowledge or consent.

3.     After a customer is convinced to purchase a month of Defendants' F1 TV streaming service, customers are unwittingly enrolled in Defendants' F1 TV streaming service that automatically renews either monthly or yearly. Defendants thereafter post charges to the consumer's credit or debit card in the amount of $9.99 per month for "F1 TV Pro" or $2.99 per month for "F1

---

[1]     https://www.libertymedia.com/tracking-stocks/formula-one-group (last visited July 27, 2022).

TV Access." The annual charges for these services are $79.99 and $26.99, respectively. The problem with Defendants' business practices is they fail to provide clear and conspicuous disclosures mandated by California law and fail to provide a clear mechanism by which consumers may cancel their subscriptions.

4. Defendants have availed themselves of the highly profitable subscription economy. Subscription services were estimated be worth $650 billion in 2020 alone and are anticipated to drastically increase as more companies avail themselves of the marketing strategy. In fact, federal regulators are investigating ways to make it harder for companies like Defendants to trap consumers in auto-renewal subscriptions. However, the subscription business has outpaced the federal regulations that police it.

5. Plaintiff alleges that Defendants violate California law in connection with an illegal automatically renewing F1 TV streaming service. Defendants enroll consumers in a subscription service without providing the "clear and conspicuous" disclosures mandated by California law, and post charges to consumers' credit or debit cards for purported subscription charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. Furthermore, Defendants fail to provide an easy and efficient mechanism for customers to cancel the subscription service before its automatic renewal. Defendants also make it difficult and confusing to cancel their subscription, often resulting in failed cancellations and repeated subscription charges.

6. This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code §§ 17600, *et seq*.) ("ARL"), the Consumers Legal Remedies Act (Civ. Code §§ 1750, *et seq*.) ("CLRA"), the Unfair Competition Law (Bus. & Prof. Code §§ 17200, *et seq*.) ("UCL"), False Advertising Law (Bus. & Prof. Code §§ 17500, *et seq*.) ("FAL"), and California common law. As a direct result of this conduct, Plaintiff and all those similarly situated customers (the "Class Members") suffered economic injury in the loss of money paid for a F1 TV streaming service subscription. As such, Plaintiff brings this class action on behalf of himself and all similarly situated Class Members seeking declaratory relief, injunctive relief, equitable relief (including, but not limited to, restitution), damages, and reasonable attorneys' fees and costs.

3
CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this matter under Cal. Code Civ. P. § 410.10 and Article VI, Section 10 of the California Constitution. because this case is not given by statute to other trial courts. This action is brought as a class action on behalf of Plaintiff and all Class Members pursuant to Cal. Code Civ. Proc. § 382.

8.      This This Court has personal jurisdiction over Defendants because during all relevant times, Defendants conducted sufficient business in, and had sufficient contacts with, and intentionally availed themselves of the laws and markets of California, including San Diego County, as to render exercise of jurisdiction by California courts permissible. Defendants have marketed, promoted, distributed, and sold the F1 TV streaming subscription at issue in California, including in San Diego County.

9.      Venue is proper in San Diego, California pursuant to Cal Code Civ. P. § 1780(d) because Defendants transact business in this County.

**THE PARTIES**

10.      Plaintiff Trevor Davenport is a citizen of and resides in the State of California. On or about December 2021, Plaintiff Davenport downloaded Defendants' F1 TV application via Fire Stick on his smart TV. He then created an account and purchased one month of F1 TV Pro. During the enrollment process, but before he purchased Defendants' streaming service, Mr. Davenport provided his personal credit card/debit card information directly to Defendants. At the time Mr. Davenport purchased the F1 TV streaming service, Defendants did not disclose to Mr. Davenport the required automatic renewal offer terms associated with the subscription program or obtain Mr. Davenport's affirmative consent to those terms. After Mr. Davenport completed his initial order, Defendants sent him an email that failed to provide Mr. Davenport with the complete automatic renewal terms that applied to Defendants' offer, a description of Defendants' full cancellation policy, or information regarding how to easily cancel the subscription. Mr. Davenport did not receive any other acknowledgment that contained the required information. After he first signed up for the F1 TV streaming service, Defendants automatically renewed his subscription and charged Mr. Davenport's credit card. Approximately one month after his initial purchase, Mr. Davenport

4

CLASS ACTION COMPLAINT

discovered that Defendants enrolled him in an automatically renewing monthly subscription service when he noticed a new monthly charge to his credit card/debit card. Mr. Davenport was surprised to see the recurring charge. After looking through the phone application downloaded on his personal phone, Mr. Davenport was eventually able to cancel his subscription in or around March 2022. Had Defendants complied with the ARL, Mr. Davenport would not have agreed to sign up for and purchase the F1 TV streaming service had he known at the time of purchase that it was a subscription that would be automatically renewed each month at a cost of approximately $9.99. Alternatively, he would have cancelled his subscription prior to the expiration of the initial subscription period so as to avoid being charged any renewal fee. Accordingly, Plaintiff Davenport has suffered injury in fact and lost money or property as a result of Defendants' misconduct as alleged herein.

11.    Defendant Liberty Media Corporation is a publicly-traded Delaware corporation that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

12.    Defendant Formula One Group is a wholly owned subsidiary of Defendant Liberty Media Corporation. Liberty Media Corporation acquired Formula One for $8.0 billion as of January 23, 2017.[2]

13.    Defendant Formula One Digital Media Limited is part of Formula One Group and is also owned by Defendant Liberty Media Corporation. Formula One Digital Media Limited operates the website found at https://www.formula1.com/en/subscribe-to-f1-tv.html.[3] As described below, this is the website on which consumers subscribe to the Formula One streaming service complained of herein.

14.    The true names and capacities of the DOE Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sue each such Defendant by said fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to

---

[2]    https://www.libertymedia.com/about/company-history (last visited July 27, 2022).
[3]    https://account.formula1.com/#/en/terms-of-use ("Access to and use of the Site is provided by Formula One Digital Media Limited…") (last visited July 27, 2022).

reflect the true names and capacities of the Doe Defendants when such identities become known.

15. At all relevant times, each of the Defendants were the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiff alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, and/or aided and abetted the conduct of all other Defendants.

16. At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions complained of herein. The conduct of Defendants' managers and supervisors was at all relevant times undertaken as employees of Defendants, acting within the scope of their employment or authority in all of the unlawful activities described herein.

## THE CALIFORNIA AUTOMATIC RENEWAL LAW

17. As described below, the California Automatic Renewal Law was enacted to prohibit companies like Defendants from enrolling consumers in automatic renewal programs without first making specific clear and conspicuous disclosures and without obtaining each individual's affirmative consent.

18. In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010, as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code §§ 17600, *et seq*. (the California Automatic Renewal Law or "ARL"). SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

19.     The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

20.     The ARL seeks to ensure that, before there can be a legally binding automatic renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1)     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. (Bus. & Prof. Code § 17602(a)(1).) For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code § 17601(c).) In the case of an audio disclosure, 'clear and conspicuous' means in a volume and cadence sufficient to be readily audible and understandable." (*Id.*) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e)

1    the minimum purchase obligation, if any. (Bus. & Prof. Code § 17601(b).)

2        (2)    Charge the consumer's credit or debit card, or the consumer's account with a

3    third party, for an automatic renewal or continuous service without first obtaining the consumer's

4    affirmative consent to the agreement containing the automatic renewal offer terms or continuous

5    service offer terms, including the terms of an automatic renewal offer or continuous service offer

6    that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code §

7    17602(a)(2).)

8        (3) Fail to provide an acknowledgment that includes the automatic renewal or

9    continuous service offer terms, cancellation policy, and information regarding how to cancel in a

10    manner that is capable of being retained by the consumer. (Bus. & Prof. Code § 17602(a)(3).) If the

11    offer includes a free trial, the business must also disclose in the acknowledgment how to cancel and

12    allow the consumer to cancel before the consumer pays for the goods or services. (*Ibid*.) Section

13    17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone

14    number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall

15    provide another cost-effective, timely, and easy-to-use mechanism for cancellation.[4]

16

17

18

19    _____

[4]    According to the Federal Trade Commission, the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, which contains the federal rules for automatic renewal agreements, "requires negative option sellers to provide a simple, reasonable means for consumers to cancel their contracts. To meet this standard, negative option sellers should provide cancellation mechanisms that are at least as easy to use as the method the consumer used to initiate the negative option feature. For example, to ensure compliance with this simple cancellation mechanism requirement, negative option sellers should not subject consumers to new offers or similar attempts to save the negative option arrangement that impose unreasonable delays on consumers' cancellation efforts. In addition, negative option sellers should provide their cancellation mechanisms at least through the same medium (such as website or mobile application) the consumer used to consent to the negative option feature. The negative option seller should provide, at a minimum, the simple mechanism over the same website or web-based application the consumer used to purchase the negative option feature. If the seller also provides for telephone cancellation, it should provide, at a minimum, a telephone number, and answer all calls to this number during normal business hours, within a short time frame, and ensure the calls are not lengthier or otherwise more burdensome than the telephone call the consumer used to consent to the negative option feature. *See* https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 14.

8

21.     Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof. Code § 17535. (Bus. & Prof. Code, § 17604, subd. (a).).

22.     Defendants' F1 TV streaming subscriptions are "automatic renewal" plans under Cal. Bus. & Prof. Code § 17601(a).

23.     As a result of the foregoing, all goods, wares, merchandise, or products sent to Plaintiff and the Class Members as part of and pursuant to the terms of their F1 TV streaming service subscriptions are deemed to be an "unconditional gift" under Cal. Bus. & Prof. Code § 17603.

24.     As a result of Defendants' violations of the ARL, Plaintiff and the Class Members suffered economic injury and are entitled to reimbursement of their F1 Tv streaming subscription payments.

## FACTS GIVING RISE TO THIS ACTION

25.     Defendants automatically subscribed Plaintiff and members of the Class to a F1 TV streaming service without first providing the clear and conspicuous disclosures required by the ARL and without first obtaining their affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. To make matters worse, Defendants do not provide an effective and easy-to-use mechanism for consumers to cancel their F1 TV streaming service.

26.     Upon accessing Defendants' F1 TV home page, potential customers are first greeted with several graphics and images of Formula 1 racing. The home page prompts consumers to "Subscribe to F1TV" by clicking on a red box with the word "Subscribe" followed by the phrase "All F1 LIVE." This home page does not include any of the automatic renewal terms required by California law. At this point, Defendants' webpage does not in any way indicate that the subscription will automatically charge the consumer on a yearly or monthly basis.

27.     Upon clicking on a red "Subscribe" button the consumer is directed to a new page that indicates the cost of purchasing Defendants' F1 TV service. This page advertises the streaming service and several features of the F1 TV Pro and F1 TV Access services including but not limited to the following features of the F1 TV Pro service:

- Live stream every track session for all GPs

- Access all diver onboard cameras & team radios

- Live stream F1, F2, F3 and Porsche Supercup

- Full Race replays and highlights

- On demand access to all F1 onboard cameras

- Watch all F1, F2, F3, Porsche Supercup replays

- F1's historic race archive

28.     Similarly, Defendants' F1 TV Access service advertises the following features:

- Full Race replays and highlights

- On demand access to all F1 onboard cameras

- Watch all F1, F2, F3, Porsche Supercup replays

-F1's historic race archive

29.     This page does not include any of the automatic renewal terms as required by California law. There is no indication that the streaming service will automatically renew on a yearly or monthly basis.

30.     Upon selecting either F1 TV Pro or F1 TV Access, the consumer is taken to a new page where he or she is prompted to "sign-in" into an existing account.

31.     Alternatively, a new user can "Register" for a new account by providing an email address and creating a password.

32.     Defendants fail to provide any form of disclosures regarding the automatically renewing nature of its subscription services. Once the consumer signs in or creates a new account, the consumer is taken directly to a "Review Your Order" page that requests the consumer's credit/debit card information and billing address to pay for the previously selected service. Up until this point, none of the webpages contain clear and conspicuous auto-renewal disclosures as required by California law, or any disclosures at all for that matter.

///

///

///

10

CLASS ACTION COMPLAINT

33.    At the top of the Review Your Order page, in large bold letters, is the name of the selected service (either F1 TV Pro or F1 TV Access), the "Total" price to be charged, and sections to fill in the user's payment information:



34.    As shown above, the third line item says "Total" on the right-hand side and displays the price for one month or one year of service to the left-hand side in large, bolded letters. The total price is significantly larger than the surrounding text. In similarly large letters, the "Review Your Order Page" provides a large box for a "Voucher Code" and additional large boxes for "Payment"

11

1  information including billing and credit card information. The words "Renewal Cycle" are not clear
2  and conspicuous as the font is significantly smaller than the other font located at the top of the page
3  and throughout the page including but not limited to phrases such as "Review Your Order,"
4  "Voucher Code," "Payment," and the total price for a single purchase. Not only does this so-called
5  disclosure phrase fail to be clear and conspicuous; it also fails to disclose any of the automatic
6  renewal terms as required by California law. It is unclear from the words "renewal cycle" and/or
7  "plan type" that the subscription will result in a recurring monthly or annual cost. There is no
8  indication that the subscription will automatically renew, that the subscription will continue until it
9  is cancelled, when such renewal will occur, the amount of each recurring charge, and/or whether the
10  recurring charge is subject to change. Moreover, there is no indication that the subscription can be
11  canceled or the process by which to cancel. As such, the "Review Your Order" page fails to provide
12  the clear and conspicuous automatic renewal disclosures as required by California law. Moreover,
13  after filling out the credit card information, a consumer can select "Complete Order" without ever
14  being provided with any of the clear and conspicuous disclosures as required by California law.

15        35.    Next, a user must scroll down the page to enter their address associated with their
16  payment and click on a bright red "Complete Order" button:

17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

12
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## REVIEW YOUR ORDER

**TV Pro**                                    Modify order

Plan Type                    Monthly

Renewal Cycle:               Monthly

Total                        **$9.99**

## VOUCHER CODE

[                                        ]

CANCEL        APPLY

## PAYMENT

Name on card

Name on card

Card number

1234 1234 1234 1234

Expiration Date            Security code ⓘ

MM/YY                      CVV

Address line 1

Address line 1

Address line 2

Optional

City

City

State                      Zip Code

-- --                      Zip/Postal Code

Country

United States of America

☐  I have read and agree to Terms and Conditions, Privacy Policy and
    Subscription Terms

COMPLETE ORDER

13

CLASS ACTION COMPLAINT

36.    As shown above, the bottom of the "Review Your Order" page has the following language "I have read and agree to the Terms and Conditions, Privacy Policy and Subscription Terms." The font is smaller than any other font on the page and is embedded between large boxes to fill out credit card and billing information above it and a bright red box prompting the user to "COMPLETE ORDER" below it. Upon clicking on the phrase "Terms and Conditions" the consumer is taken to a new page that includes several terms, none of which explain the automatic renewal terms. Upon clicking on the phrase "Privacy Policy" the consumer is taken to a new page that includes several terms, none of which explain the automatic renewal terms. The very last link under "Subscription Terms" takes the user to Defendants' subscription terms.

37.    The three hyperlinks link to pages that include over 6,000 words. The Subscription Terms button links to a page that includes over 4,500 words and a long list of 16 different terms, many of which include subsections. A user must scroll down several times to reach section 7 called "Your Rights to End Your Subscription to the Service." Under this section, Defendants state for the first time that an annual subscription will automatically renew on the anniversary of your purchase…" The next subsection says for the first time that a monthly "… subscription will automatically renew each month and the payment method provided at the time of the initial purchase of the Services will be charged accordingly on the corresponding date of initial purchase in every subsequent month." These terms are not clear and conspicuous as they are buried within a long list of terms and conditions all of which are of the same font. There are no special marks calling attention to this section of the long list of terms. Moreover, these terms are found only after clicking on the link to the "Subscriptions Terms" which is found at the bottom of a completely different page (in significantly smaller font), and next to two other links which also take the user to pages with pages of boilerplate contract language. Further, a user can check out and purchase the service without ever opening the Subscription Terms. Other than these terms, which fail to be clear and conspicuous, there are no other clear and conspicuous disclosures provided to the consumer prior to purchasing a service.

38.    Moreover, Defendants fail to explain the cancellation policy in a way that can be retained by the user. For example, subsection 7.3 of the "Subscription Terms" states the purported

14

cancellation policy which provides that the user may cancel the subscription "… by providing us reasonable notice before your next monthly or annual subscription renews." There is no indication as to the meaning of the word "reasonable" such that users do not know what qualifies as "reasonable notice." Even more confusing is subsection 7.4 which provides "You have the right to cancel your purchase of any Service, and receive a full refund without giving any reason, any time up to 14 days from the date of purchase except where you have: (a) activated any Service and agreed that, at that point you lost the right to cancel; or (b) you purchased a Service and at that point you agreed you lost the right to cancel." It is unclear how a user may agree to lose the right to cancel.

39.    Under subsection 8.1, Defendants provide a cancellation policy that requires the consumer to email Defendants providing an email address, date of birth, billing date, and the first 4 digits of the payment used for the Service. Even more confusing for the consumer; is under subsection 8.2 it directs the user to review subsection 7.4 and the other 4,500 terms on the webpage: "If you are entitled to a refund (as expressly set out in Clause 7.4 or otherwise in these terms and conditions) we will refund you the price you paid for the Service, by the method you used for payment."

40.    A user can also purportedly cancel the subscription by visiting the "Accounts" page, but again it's unclear what steps a user must take in order to cancel the service once at the "Accounts" page. Lastly, section 8.1 purports that the confirmation email will provide cancellation instructions. However, the email confirmation does not provide the cancellation instructions or does not provide easy-to-understand cancellation instructions.

41.    The Review Your Order page does not present the complete "automatic renewal offer terms," as defined by Cal. Bus. & Prof. Code §17601(b), in violation of Section 17602(a)(1) of the ARL. Defendants also fail to present a complete "description of the cancellation policy that applies to the offer." Cal. Bus. & Prof. Code § 17601(b)(2). With respect to cancellation, the Review Your Order page is silent. A user must go through the arduous process of investigating whether there are hyperlinks, and then even if the correct hyperlink is clicked, one must scroll through several pages, sections, and subsections to find the cancellation instructions. Once the relevant subsections are found, it is still unclear how the user can cancel—it is not an "easy-to-use mechanism for

15

CLASS ACTION COMPLAINT

1   cancellation" as required by the ARL. Cal. Bus. & Prof. Code § 17602(b).

2       42.     As a result of Defendants' failure to provide clear and conspicuous automatic

3   renewal terms under California law, consumers do not affirmatively consent to the hidden renewal

4   terms of the F1 TV streaming service.

5       43.     Additionally, consumers are never provided with an acknowledgement that includes

6   the automatic renewal or continuous offer terms, cancellation policy, and information regarding how

7   to cancel in a manner that is capable of being retained by the consumer.

8       44.     Individuals that purchase Defendants' F1 TV streaming service via an application on

9   their smart phone or smart TV undergo a process that is substantially similar if not identical to the

10  process described above, including but not limited to the lack of disclosures required under

11  California law.

12      45.     Plaintiff Davenport purchased one month of Defendant's F1 TV Pro streaming

13  service without knowing that Defendants would enroll him in a monthly subscription service that

14  would automatically renew each month. On or about December 2021, Plaintiff Davenport

15  downloaded Defendants' F1 TV application via Fire Stick on his smart TV. He then created an

16  account and purchased one month of F1 TV Pro. The purchase process via a smart TV application

17  is substantially similar if not identical to the process described above. After creating an account,

18  Plaintiff Davenport purchased one month of F1 TV Pro without ever being provided with the

19  required disclosures under California law. As such, Plaintiff Davenport did not realize that

20  Defendants would enroll him in an automatically renewing monthly subscription. Approximately

21  one month after his initial purchase, Plaintiff Davenport discovered that Defendants enrolled him in

22  an automatically renewing monthly subscription service when he noticed a new monthly charge to

23  his credit card/debit card. Plaintiff Davenport was surprised to see the recurring charge. After

24  looking through the phone application downloaded on his personal phone, Plaintiff Davenport was

25  eventually able to cancel his subscription in or around March 2022.

26      46.     Defendants automatically subscribed Plaintiff to the F1 TV Pro service without first

27  providing the clear and conspicuous disclosures required by the ARL and posted charges to

28  Plaintiff's debit card/credit card without first obtaining their affirmative consent to an agreement

16

containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate easy-to-use mechanism for cancelling the service before the renewal date.

47.    If Plaintiff had known that Defendants were going to automatically renew the subscription with charges of up to $9.99 per month, Plaintiff would not have purchased a F1 TV subscription in the first place.

48.    Plaintiff is not the only consumer deceived by Defendants' auto-renewal practices. Consumers have publicly complained about the unwanted and unexpected renewal charges and difficulties with canceling Defendants' unlawful practices.[5]

## **CLASS ACTION ALLEGATIONS**

49.    Plaintiff brings this lawsuit as a class action under Code of Civil Procedure section 382 on behalf of the following Class:

> All persons in California who, within the applicable statute of limitations period, purchased Defendants' subscription service for F1 TV and were charged a fee to renew their subscription.

50.    Excluded from the Class are all employees of Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is assigned.

51.    Excluded from the Class are: (1) Defendants and their officers, directors, employees, principals, affiliated entities, controlling entities, agents, and other affiliates; (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons

---

[5]    *see* https://www.trustpilot.com/review/f1tv.formula1.com ("I had to send 14 emails in order to get this cancelled and refunded, and was told something completely different each time. Do not bother with this app or subscription at all."; "Very telling when it is difficult to find out how to cancel a subscription. Finally figured it out, I hope, and have forwarded an e-mail. Hopefully will be out of this very soon."; "… How can I cancel this automatic paying?"; "There's no way of contacting anyone. they obviously don't want you to. THERES A TELEPHONE NUMBER ON THEIR WEBSITE TO CONTACT THEM. THERES A POOR LADY ON THE OTHER END SAYING THEY ARE NOT F1 AND THEYVE HAD LOADS OF CALLS LAUGHABLE!!!!"; "Just horrible. Firstly, I did a trial and then cancelled, which required stating a reason. As I don't like this practice I put some blatant lie - that the user deceased. Surprise, in a few days I got charged for the annual subscription") (last visited October 27, 2022); *see also* https://www.reddit.com/r/F1TV/comments/nu6j9p/how_to_cancel_subscription/ ("Why is there no option to cancel subscription for f1tv? I followed this steps but I guess I am too stupid. I simply don't find any 'Cancel Subscription' option") (last visited October 27, 2022).

17

**CLASS ACTION COMPLAINT**

1    or entities described herein; and (3) the Judge(s) assigned to this case and any members of their

2    immediate families.

3         52.    <u>Ascertainability</u>. The members of the Class may be ascertained by reviewing records

4    in the possession of Defendants and/or third parties, including without limitation Defendants'

5    marketing and promotion records, customer records, and billing records.

6         53.    <u>Common Questions of Fact or Law</u>. There is a well-defined community of interest

7    in the common questions of law and fact affecting all Class Members. The questions of law and fact

8    predominate over questions affecting only individual Class Members, and include without

9    limitations: (1) whether Defendants present all statutorily-mandated automatic renewal offer terms,

10    within the meaning of Business and Professions Code § 17601(b); (2) whether Defendants present

11    automatic renewal offer terms in a manner that is "clear and conspicuous," within the meaning of §

12    17601(c), and in "visual proximity" to a request for consent to the offer, or in the case of an offer

13    conveyed by voice, in temporal proximity to a request for consent to the offer, as required by §

14    17602; (3) whether Defendants obtain Class Members' affirmative consent to an agreement

15    containing clear and conspicuous disclosure of automatic renewal offer terms before charging a

16    credit card, debit card, or third-party payment account; (4) whether Defendants provide Class

17    Members with an acknowledgment that includes clear and conspicuous disclosure of all statutorily-

18    mandated automatic renewal or continuous service offer terms, the cancellation policy, and

19    information regarding how to cancel; (5) Defendants' record-keeping practices; (6) the appropriate

20    remedies for Defendants' conduct; and (7) the appropriate terms of an injunction.

21         54.    <u>Numerosity</u>. The Class is so numerous that joinder of all Class Members would be

22    impracticable. The Class consists of at least 100 members.

23         55.    <u>Typicality and Adequacy</u>. Plaintiff is an adequate representative of the Class because

24    his interests do not conflict with the interests of the Class Members he seeks to represent, and he is

25    similarly situated with members of the Class. Plaintiff alleges that Defendants enrolled Class

26    Members in automatic renewal subscriptions without disclosing all terms required by law, and

27    without presenting such terms in the requisite "clear and conspicuous" manner; charged Class

28    Members' credit cards, debit cards, or third-party accounts without first obtaining the Class

members' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms; and failed to provide the requisite acknowledgment. Plaintiff has no interests that are adverse to those of the other Class Members. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel who are competent and experienced in the prosecution of class action litigation.

56. <u>Superiority</u>. A class action is superior to other methods for resolving this controversy. Because the amount of restitution or damages to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for class members to redress the wrongs done to them without a class action forum. Plaintiff and the members of the Class have suffered and will continue to suffer harm as a result of Defendants' conduct. Defendants continue to deny wrongdoing or remedy the conduct that is the subject of this complaint. Class members do not know that their legal rights have been violated. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

57. <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>. Defendants have acted on grounds that are generally applicable to the members of the Class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**

**Violations of California's Unfair Competition Law**

**(Bus. & Prof. Code, §§ 17200 *et seq*.)**

58. Plaintiff incorporates the previous allegations as though fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

60. Defendants are "person[s]" as that term is defined under Cal. Bus. & Prof. Code § 17201.

61. The Unfair Competition Law defines unfair competition as including any unlawful, unfair or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under section 17500. (Bus. & Prof. Code § 17200.) In the course of business, Defendants committed "unlawful" business practices by, among other things, making the

representations and omissions of material facts, as set forth more fully herein, and violating Cal. Bus. & Prof. Code §§ 17600, *et seq*., and the common law. Plaintiff, individually and on behalf of the other Class Members, reserves the right to allege other violations of the law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

62.    During the class period, Defendants committed and continue to commit unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, and/or misleading advertising, by, inter alia and without limitation: (a) failing to present the automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of § 17602(a)(l); (b) charging the consumer in connection with an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of automatic renewal offer terms or continuous service offer terms, in violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of § 17602(a)(3); (d) representing that goods or services have characteristics, uses, and/or benefits which they do not have, in violation of Civil Code § 1770(a)(5); advertising goods and services with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); (e) representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of Civil Code § 1770(a)(16); and (f) representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of Civil Code § 1770(a)(17). Plaintiff reserves the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

63.    Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

20
CLASS ACTION COMPLAINT

attributable to such conduct. Defendants' acts and omissions also violate and offend the California Legislature's intent, codified by the Automatic Renewal Law, "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent." Cal. Bus. & Prof. Code § 17602. This conduct constitutes violations of the unfair prong of the UCL. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

64.    The UCL also prohibits any "fraudulent business act or practice." In the course of business, Defendants committed "fraudulent business act[s] or practices" by, among other things, failing to make the required disclosures under Cal. Bus. & Prof. Code §§ 17600, *et seq*.

65.    Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false or misleading and likely to deceive the consuming public within the meaning of the UCL.

66.    Plaintiff, in fact, has been deceived as a result of their reliance on Defendants' material representations and omissions. Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts and omissions. Such injury includes being charged a renewal membership fee for a Defendants' F1 TV streaming subscription service, and other damages proximately caused by Defendants' misconduct as alleged.

67.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to Bus. & Prof. Code § 17203, Plaintiff, on behalf of himself, all others similarly situated, and the general public are entitled to (1) restitution from Defendants of all money obtained from Plaintiff and the other Class Members as a result of unfair competition; (2) an injunction prohibiting Defendants from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with Cal. Bus. & Prof. Code § 17203.

## <u>SECOND CAUSE OF ACTION</u>

### Violation of California's False Advertising Law

### (Bus. & Prof. Code §§ 17500, *et seq.*)

68.    Plaintiff incorporates the previous allegations as though fully set forth herein.

21

CLASS ACTION COMPLAINT

69.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

70.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

71.    Defendants committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendants' products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known or which by the exercise of reasonable care should be known by Defendants to be untrue or misleading. Defendants have intentionally made or disseminated untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

72.    Defendants' statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendants' F1 TV streaming subscriptions concerning the terms of payment for and cancellation of a consumer's automatic payments. Such representations and omissions on the checkout page (i.e., the "Review Your Order" page depicted above) constitute false and deceptive advertisements.

73.    Defendants' actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived. Plaintiff and members of the Class were deceived by Defendants' statements and omissions made online (or via a phone application or otherwise) when they signed up and started paying for their F1 TV streaming subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well. A reasonable consumer would be misled and were in fact mislead by Defendants' false and misleading statements and material omissions.

22

CLASS ACTION COMPLAINT

Plaintiff and other members of the Class did not learn of Defendants' cancellation and automatic payment policies until after they had already signed up and started paying for Defendants' F1 TV streaming services. They relied on Defendants' statements and omissions to their detriment.

74.    Plaintiff and the Class lost money or property as a result of Defendants' FAL violations because they would not have purchased the F1 TV streaming services on the same terms if the true facts were known about the product and the subscriptions do not have the characteristics as promised by Defendants.

75.    Pursuant to Bus. & Prof. Code § 17535, Plaintiff seeks an order of this Court ordering Defendants' to fully disclose the true nature of its misrepresentations. Plaintiff further seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendants from continuing with its false and deceptive advertisements and omissions including restitution that will restore the full amount of their money or property, disgorgement of Defendants' applicable profits and proceeds, and an award of costs and reasonable attorneys' fees. Such conduct is ongoing and continues to this date.

## THIRD CAUSE OF ACTION

### Violations of the California Consumers Legal Remedies Act

### (Civ. Code, §§ 1750 *et seq.*)

76.    Plaintiff incorporates the allegations of the preceding paragraphs as though set forth herein.

77.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

78.    Plaintiff and the members of the Class are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendants' goods and/or services for personal, family, or household purposes. The purchases and payments by Plaintiff and Class members are "transactions" within the meaning of Civil Code § 1761(e).

79.    Defendants are "persons" under Cal. Civ. Code § 1761(c). Defendants' subscription service offers pertain to "goods" and/or "services" within the meaning of Civil Code § 1761(a) and (b).

80.     Defendants conduct, as described herein, which includes its failure to timely and adequately disclose the terms of its automatic renewal and/or continuous service associated with its F1 Tv streaming subscription service pursuant to Cal. Bus. & Prof. Code §§ 17600, *et seq*. violates California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. Defendants violated the CLRA by misrepresenting and omitting material facts regarding the automatic renewal and/or continuous service terms of its subscription services, and by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions that were intended to result in, and did result in, the sale of its F1 TV streaming subscription service:

a.     Representing that goods or services have characteristics, uses, and/or benefits which they do not have (Civil Code § 1770(a)(5));

b.     Advertising goods or services with intent not to sell them as advertised (Civil Code § 1770(a)(9));

c.     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Civil Code § 1770(a)(16)); and

d.     Representing that consumers will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction (Civil Code § 1770(a)(17)).

81.     Defendants violated the CLRA by failing to clearly and conspicuously disclose the terms of their automatic renewal and/or continuous service associated with its F1 TV streaming subscription service, automatically charging Plaintiff and members of the Class a fee to renew their subscription and failing to cancel the subscription service when requested.

82.     Plaintiff, on behalf of himself and all other Class members, seeks an order enjoining the above-described unlawful acts and practices of Defendants and for restitution and disgorgement.

83.     Pursuant to § 1782 of the CLRA, on August 16, 2022, Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the acts and practices described above and give notice to all affect consumers of Defendants' intent to so act was mailed via certified mail to Defendants. A copy of the letter is attached as **Exhibit 1**.  Defendants have failed to rectify the

24

CLASS ACTION COMPLAINT

problems associated with the actions detailed above and give notice to all affected consumers within the expiration of the statutory period. Accordingly, Plaintiff seeks actual, punitive, and statutory damages (*see* Civil Code § 1782.).

84.    Pursuant to § 1780(d) of the Act, attached as **Exhibit 2** is the affidavit showing that this action was commenced in the proper forum.

## FOURTH CAUSE OF ACTION

### Conversion

85.    Plaintiff incorporates the previous allegations as though fully set forth herein.

86.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

87.    As a result of charges made by Defendants to Plaintiff's and Class Members' credit and/or debit cards without authorization and in violation of California law, Defendants have taken money that belongs to Plaintiff and the Class. Defendants have wrongfully interfered with Plaintiff's and Class Members' possession of money. The amount of money wrongfully taken by Defendants is capable of identification from records in the possession of Defendants and/or third parties, including Defendants' customer and billing records.

88.    Defendants engaged in this misconduct knowingly, willfully, and with oppression, fraud, and/or malice.

89.    As a result of Defendants' actions, Plaintiff and the Class have suffered damages.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

90.    Plaintiff incorporates the previous allegations as though fully set forth herein.

91.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

92.    As a direct and proximate result of misrepresentations concerning the F1 TV streaming subscription service and failure to sufficiently disclose that F1 TV streaming subscription service will be automatically renewed, Defendants have profited through the sale of their services and/or products to Plaintiff and Class members.

93.     Defendants' unlawful and wrongful acts, as alleged above, enabled Defendants to unlawfully receive money from Plaintiff and the Class it would not have otherwise obtained.

94.     Plaintiff and the Class members have conferred benefits on Defendants, which Defendants have knowingly accepted and retained.

95.     Defendants' retention of the benefits conferred by Plaintiff and the Class members would be against fundamental principles of justice, equity, and good conscience.

96.     Plaintiff and Class members seek to disgorge Defendants' unlawfully retained money resulting from the unlawful conduct and seek restitution and rescission for the benefit of Plaintiff and Class members.

97.     Plaintiff and the Class members are entitled to the imposition of a constructive trust upon Defendants, such that the unjustly retained money is distributed equitably by the Court to and for the benefit of Plaintiff and the Class members.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed Class, respectfully request the Court enter judgment in Plaintiff's favor and against Defendants as follows:

a.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of Defendants' unlawful, unfair and fraudulent business practices;

c.     Ordering actual, treble, statutory and punitive damages;

d.     Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

e.     Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

f.     Ordering such other and further relief as may be just and proper.

26

CLASS ACTION COMPLAINT

## JURY TRIAL DEMAND

Plaintiff and the Class members hereby demand a trial by jury.

Dated: November 3, 2022

**CROSNER LEGAL, P.C.**

By:   *s/ Zachary M. Crosner*
ZACHARY M. CROSNER

Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
mike@crosnerlegal.com
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

**LAW OFFICE OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN 216752)
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com

*Attorneys for Plaintiff*

27

CLASS ACTION COMPLAINT

# Exhibit 1



Chad Saunders, Esq.
9440 Santa Monica Blvd.,
Ste. 301
Beverly Hills, CA 90210

chad@crosnerlegal.com
direct: (510) 439-9470
fax: (310) 510-6429

_____

August 16, 2022

**SENT VIA U.S. CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Corporation Service Company
Agent for Service of Process for:
**Liberty Media Corporation**
251 Little Falls Drive
Wilmington, DE 19808

**Liberty Media Corporation**
Attn: Legal Department
12300 Liberty Blvd.
Englewood, CO 80112

**Formula One Digital Media Limited**
No. 2 St. James's Market,
London, United Kingdom, SW1Y4AH

**Formula One Group**
Attn: Legal Department
12300 Liberty Blvd.
Englewood, CO 80112

**Formula One Group**
No. 2 St. James's Market,
London, United Kingdom, SW1Y4AH

*Re: Monahan et. al. v. Liberty Media Corporation et. al.*

| | | |
|---|---|---|
| Our Client(s) | : | Patrick Monahan and Trevor Davenport |
| Products | : | Formula One TV Pro and Formula One TV Access |
| Matter | : | CLRA Demand Letter |

To Whom It May Concern:

Please be advised that our office represents Patrick Monahan and Trevor Davenport ("Plaintiffs"), and other similarly situated individuals, in pursuing class action wide legal claims against Liberty Media Corporation; Formula One Group; and Formula One Digital Media Limited ("Defendants") for violations of the Consumer Legal Remedies Act ("CLRA"), and California Business and Professions Code §17200 ("UCL").

August 16, 2022, CLRA Demand Letter
Liberty Media Corporation et. al.
Page 2 of 5

Having been formally notified of our representation, we respectfully demand you not contact our clients for any reason. Instead, please direct all future contact and correspondence to this office. We reserve the right to seek injunctive relief against you should you fail to honor these directives.

The purpose of this letter is to advise Defendants of their violations and to quickly resolve the matter of my client's right to compensation for the same, without resorting to expensive and unnecessary litigation. Before additional damages accrue, including needless attorney fees, we should work together expeditiously to correct the inequity that occurred in connection with Defendants' handling of the matters detailed below. Thus, please accept this correspondence as notice pursuant to the CLRA, of violations thereof. Be advised, you have thirty (30) calendar days from the date of receipt of this notice, to correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of § 1770 of the CLRA, as further outlined below.

Please review the violations set forth below and contact our offices immediately, to discuss settlement.

### Facts

Defendant Formula One Digital Media Limited is part of Formula One Group, and so is also owned by Defendant Liberty Media Corporation. Formula One Digital Media Limited operates the website found at https://www.formula1.com/en/subscribe-to-f1-tv.html.[1] As described below, this is the website on which consumers subscribe to the Formula One streaming service complained of herein.

As part of its business activities, Defendants operate an online streaming service called "F1 TV" to which consumers may subscribe on a monthly or annual basis. After subscribing to F1 TV, Defendants thereafter post charges to the consumer's credit or debit card in the amount of $9.99 per month for "F1 TV Pro" or $2.99 per month for "F1 TV Access". The annual charges for these services are $79.99 and $26.99, respectively. Defendants automatically renew these charges on a monthly or annual basis. However, Defendants fail to provide "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported subscriptions charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures.[2] As such, Defendants failed to properly inform consumers of its autorenewal terms, thereby violating Cal. Bus. & Prof. Code § 17600 *et. seq*. More specific examples illustrating how Defendants violate California's Automatic Renewal Laws and the CLRA can be found in Plaintiffs' Complaint, which is affixed hereto for ease of reference.

---

[1] See https://account.formula1.com/#/en/terms-of-use ("Access to and use of the Site is provided by Formula One Digital Media Limited…") (last visited July 27, 2022).
[2] Based on information and belief, Defendants fail to provide the required disclosures on all platforms that provide access to Defendants' F1 TV service including but not limited via desktop, smart phone application, and/or smart TV application.

August 16, 2022, CLRA Demand Letter
Liberty Media Corporation et. al.
Page 3 of 5


Plaintiff Monahan first purchased Defendants' F1 TV Pro service in or around March 2021 by logging onto Defendants web page at https://f1tv.formula1.com/ via his desktop. Upon clicking on the "Subscribe" button on Defendants' home page, Plaintiff Monahan was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Monahan then created an F1 TV account by providing his email address and creating a password. After creating the account, Plaintiff Monahan paid for one month of Defendant's F1 TV Pro using a personal credit card and/or debit card. To Plaintiff Monahan's surprise, Defendants automatically enrolled him in a monthly subscription plan that was scheduled to renew each month. On or around April 2021, Plaintiff Monahan attempted to cancel the monthly subscription by visiting Defendants' streaming service web page via his desktop. Plaintiff Monahan attempted to cancel several times and was unable to do so. To this day, Defendants continue to charge Plaintiff Monahan for a monthly subscription he did not consent to.

Plaintiff Davenport similarly purchased one month of Defendant's F1 TV Pro streaming service without knowing that Defendants would enroll him in a monthly subscription service that would automatically renew each month. On or about December 2021, Plaintiff Davenport downloaded Defendants' F1 TV application via Fire Stick on his smart TV. He then created an account and purchased one month of F1 TV Pro. Based on information and belief, the purchase process via a smart TV application is substantially similar if not identical to the process to purchase the service via a desktop. After creating an account, Plaintiff Davenport purchased one month of F1 TV Pro without ever being provided with the required disclosures under California law. As such, Plaintiff Davenport did not realize that Defendants would enroll him in an automatically renewing monthly subscription. Approximately one month after his initial purchase, Plaintiff Davenport discovered that Defendants enrolled him in an automatically renewing monthly subscription service when he noticed a new monthly charge to his credit card/debit card. Plaintiff Davenport was surprised to see the recurring charge. After looking through the phone application downloaded on his personal phone, Plaintiff Davenport was eventually able to cancel his subscription in or around March 2022.

Defendants automatically subscribed Plaintiffs to their F1 TV Pro service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiffs' debit card/credit card without first obtaining their affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.

If Plaintiffs had known that Defendants were going to automatically renew his subscription with charges of up to $9.99 per month, Plaintiffs would not have purchased Defendants' F1 TV Pro service in the first place.

August 16, 2022, CLRA Demand Letter
Liberty Media Corporation et. al.
Page 4 of 5

## CLRA (*Cal. Civ. Code* §1750 *et seq.*) Violations

Among other things, the CLRA prohibits the following "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction to result or which results in the sale or lease of goods or services" to a consumer:

1.      Passing off goods or services as those of another *Cal. Civ. Code* §1770(1);

2.      Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *Cal. Civ. Code* §1770(7);

3.      Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; - *Cal. Civ. Code* §1770(14); and

4.      Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. *Cal. Civ. Code* §1770(16).

Further, under the CLRA, a consumer may recover actual damages, an order enjoining any such practices that are prohibited by the CLRA, restitution of property, punitive damages, civil penalties, and reasonably attorney's fees and costs. *Cal. Civ. Code* §§1780, *et seq.*.

By engaging in the conduct detailed above, Defendants violated Sections §1770(1), (7), (14), and (16) of the CLRA, thereby entitling Plaintiffs to attorney's fees and costs, and actual and punitive damages.

The enclosed draft complaint provides further detail regarding the factual and legal basis of the foregoing claims asserted against Defendants.

## Unfair Competition Law (*Cal. Bus. Prof. Code* §17200)

The Unfair Competition Law, Cal. Bus. Prof. C. §17200 prohibits unlawful, unfair or fraudulent business acts or practices. Further, any person who has suffered injury in fact and has lost money or property as a result thereof may bring an action to enjoin or restrain any violation of this act and recover restitution resulting from such violations. *Cal. Bus. Prof. Code* §4381(b)-(c).

Defendants engaged in fraudulent, unfair and unlawful business practices through their conduct and violated the UCL. Defendants made representations, and omitted material facts, to Plaintiffs and this amounts to fraudulent and unfair business practices. Further, as noted above, Defendants violated the CLRA, thus engaging in unlawful business practices. Defendants' conduct, as detailed above, violates numerous provisions of the CLRA; consequently, said conduct constitutes unlawful business practices. Defendants' conduct entitles Plaintiffs to restitution and injunctive relief.

August 16, 2022, CLRA Demand Letter
Liberty Media Corporation et. al.
Page 5 of 5

The enclosed draft complaint provides further detail regarding the factual and legal basis of the foregoing claims asserted against Defendants.

**<u>Class Potential</u>**
At this stage, Defendants' fraudulent and deceptive business practices, and violations of both California and federal law, have impacted potentially thousands of consumers throughout the state of California and/or the nation. Thus, we anticipate either a state and/or nation-wide class of thousands of consumers whom Plaintiffs will adequately represent. The conduct detailed above is systematic in nature. Thus, certifying a class will be very straightforward. Upon certifying a class, we will seek not only actual damages, but punitive damages and statutory damages, in addition to attorney's fees and costs.

If we do not hear from Defendants within thirty (30) days, we will proceed to amend the enclosed draft complaint to include a claim for monetary damages under the CLRA, pursuant to California Civil Code section 1782(d), and to file his action against Defendants.

We are available if you want to discuss the issues raised in this letter. Thank you for your attention to this matter.

Kindest regards,

Chad Saunders, Esq.

Encl:
Class Action Complaint

# Exhibit 2

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
mike@crosnerlegal.com
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

**LAW OFFICE OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN 216752)
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com

Attorneys for Plaintiff

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved,<br><br>        Plaintiff,<br><br>v.<br><br>LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL MEDIA LIMITED; and DOES 1 to 50, inclusive,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**AFFIDAVIT OF ZACHARY M. CROSNER PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)** |

1    I, ZACHARY M. CROSNER, declare as follows:

2    1.    I am an attorney duly licensed to practice before all of the courts of the State of

3    California. I am the managing partner of the law firm of Crosner Legal, P.C., one of the counsel of

4    record for plaintiff in the above-entitled action.

5    2.    Defendants Liberty Media Corporation, Formula One Group, and Formula One

6    Digital Media Limited have done, and are doing, business in California, including San Diego

7    County. Such business includes the marketing, promotion, distribution, and sale of their F1 TV

8    streaming subscription services.

9    I declare under penalty of perjury under the laws of the State of California that the foregoing

10    is true and correct. Executed this 3rd day of November, 2022, at Beverley Hills, California.

11                                        *s/ Zachary M. Crosner*

12                                        ZACHARY M. CROSNER

# EXHIBIT B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
 LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL MEDIA LIMITED; and DOES 1 to 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
 TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/03/2022** at 10:21:18 PM
Clerk of the Superior Court
By Gabriel Lopez, Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado.  Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Superior Court for the State of California
for the county of San Diego - Hall of Justice Courthouse
330 West Broadway, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):*    37-2022-00044468-CU-MC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301 Beverly Hills, CA 90210 Tel: (310) 496-5818

DATE:            Clerk, by                , Deputy
*(Fecha)*   11/04/2022   *(Secretario)*  G. Lopez   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Michael R. Crosner (SBN 41299); Zachary M. Crosner (SBN 272295); Chad A. Saunders (SBN 257810);
Craig W. Straub (SBN 249032)
CROSNER LEGAL PC, 9440 Santa Monica Blvd., Suite 301, Beverly Hills, Ca 90210
TELEPHONE NO.: (310)496-5818            FAX NO. *(Optional):* (310) 510-6429
E-MAIL ADDRESS: mike@crosnerlegal.com; zach@crosnerlegal.com; chad@crosnerlegal.com; craig@crosnerlegal.com
ATTORNEY FOR *(Name):* Trevor Davenport

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/03/2022** at 10:21:18 PM
Clerk of the Superior Court
By Gabriel Lopez,Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: San Diego - Hall of Justice Courthouse

CASE NAME: Trevor Davenport et al. v. Liberty Media Corporation et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] **Unlimited** [ ] **Limited** (Amount (Amount demanded demanded is exceeds $25,000) $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 37-2022-00044468-CU-MC-CTL |
| | | JUDGE: Judge Richard S. Whitney |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[X] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):*
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11/03/2022

Craig W. Straub
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice– Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
 Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment *(non-domestic relations)*
 Sister State Judgment
 Administrative Agency Award *(not unpaid taxes)*
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-harassment)*
 Mechanics Lien
 Other Commercial Complaint Case *(non-tort/non-complex)*
 Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

# EXHIBIT C

1

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)
2   Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
3   Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
4   Beverly Hills, CA 90210
Tel: (310) 496-5818
5   Fax: (310) 510-6429
mike@crosnerlegal.com
6   zach@crosnerlegal.com
chad@crosnerlegal.com
7   craig@crosnerlegal.com

8

Attorneys for Plaintiff
9

[Additional Counsel Appear on Signature Page]
10

11           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                  **COUNTY OF SAN DIEGO**

13

| | |
|---|---|
| 14  TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved, | Case No.:  37-2022-00044468-CU-MC-CTL |
| 15 | **NOTICE OF CONTINUED INITIAL CASE MANAGEMENT CONFERENCE** |
| 16       Plaintiff, | |
| 17  v. | |
| 18  LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL 19  MEDIA LIMITED; and DOES 1 to 50, inclusive, | |
| 20 | |
| 21       Defendants. | |

22  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

23       **NOTICE IS HEREBY GIVEN** that the Court has continued the Initial Case Management

24  Conference to July 7, 2022 at 10:15 a.m. in Department C-65, located in the San Diego Superior

25  Courthouse, 330 W Broadway, San Diego, California 92101.

26

27

28

1    Dated: December 12, 2022                        **CROSNER LEGAL, PC**

2

3

4

5                                                    Michael Crosner, Esq.

6                                                    Zach Crosner, Esq.

7                                                    Chad Saunders, Esq.
                                                     Craig Straub, Esq.
8
                                                     Attorneys for Plaintiff TREVOR
9                                                    DAVENPORT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

*Trevor Davenport v. Liberty Media Corporation et al.*
*Superior Court County of San Diego Case No. 37-2022-00044468-CU-MC-CTL*

3

4        At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Los Angeles, State of California. My business address is 9440
5   Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210.

6   On ' H F HP E 2022, I served true copies of the following document(s) described
as
7

8          1 2 7 , & (    2 )   & 2 1 7 , 1 8   ( '    , 1 , 7 , $ /   & $ 6

9

10

11

12

13

14                                     SEE ATTACHED SERVICE LIST

15   on the interested parties in this action as follows:

16   ___      BY EMAIL OR ELECTRONIC TRANSMISSION.  Based on an agreement of the parties to
accept service by email or electronic transmission, I caused the document(s) to be sent from
17   agutierrez@crosnerlegal.com  to the person(s) at the email addresses listed in the service list.  The email
or electronic transmission was sent on the date below.

18

19   ___      BY FACSIMILE TRANSMISSION. I transmitted copies of the above-referenced document(s) on
the interested parties in this action by facsimile transmission from (310) 510-6429.  A transmission report
20   was properly issued by the transmitting facsimile machine and the transmission was reported as complete
and without error.

21   **XX**      BY UNITED STATES POSTAL SERVICE.  I enclosed the documents in electronic pdf format
22   and submitted them electronically into the mail provider, Letterstream, Inc.'s, online mail portal
(letterstream.com) to be mailed addressed to the entities and/or persons listed in the Service List as set
23   forth herein. I caused an envelope containing the documents to be placed for collection and mailing and to
be mailed by First Class Mail, following our law firm and Letterstream, Inc.'s ordinary business practices.
24   I am readily familiar with our business practices and the business practices of Letterstream, Inc. for
collecting and processing correspondence for mailing. On the same day that correspondence is placed for
25   collection and mailing, it is deposited in the ordinary course of business with the United States Postal
Service, in a sealed envelope with postage fully prepaid. Pursuant to that practice, the above-referenced
26   document(s) were sealed in an envelope, with postage paid, and deposited with a a post office, mail box,
sub-post office, substation, mail chute, or other facility or postal pick up/drop off regularly maintained by
27   the United States Postal Service or an affiliate thereof, at or near Phoenix, Arizona.

28                                        PROOF OF SERVICE

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 22, 2022, at Los Angeles, California.

*Ashley Gutierrez*
Ashley Gutierrez

PROOF OF SERVICE

2

**SERVICE LIST**

*Trevor Davenport v. Liberty Media Corporation et al.*
*Superior Court County of San Diego Case No. 37-2022-00044468-CU-MC-CTL*

Rachel Lowe, Esq.
Kathy Huang, Esq.
Alston & Bird LLP
333 S Hope St, Fl 16
Los Angeles, CA 90071-1410
Phone: 213-576-1000 | Fax: 213-576-1100
Email: rachel.lowe@alston.com
kathy.huang@alston.com

**Attorneys for Defendant**

Liberty Media Corporation et al.

PROOF OF SERVICE

3

```
PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
LETTERSTREAM
```

Crosner Legal, PC
9440 Santa Monica Blvd., Ste. 301
Beverly Hills CA 90212

0007256082000011
Rachel Lowe, Esq./Kathy Huang, Esq.
Alston & Bird LLP
333 S Hope St, Fl 16
Los Angeles CA 90071-1410
USA

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
LETTERSTREAM



RECEIVED
JAN 03 2023
ALSTON & BIRD LLP



1 | **CROSNER LEGAL, P.C.**
2 | Michael R. Crosner (SBN 41299)
    Zachary M. Crosner (SBN 272295)
3 | Chad A. Saunders (SBN 257810)
    Craig W. Straub (SBN 249032)
4 | 9440 Santa Monica Blvd. Suite 301
    Beverly Hills, CA 90210
5 | Tel: (310) 496-5818
    Fax: (310) 510-6429
6 | mike@crosnerlegal.com
    zach@crosnerlegal.com
7 | chad@crosnerlegal.com
    craig@crosnerlegal.com
8 |
9 | Attorneys for Plaintiff
10 | [Additional Counsel Appear on Signature Page]

11 |         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 |                 **COUNTY OF SAN DIEGO**

13 |

14 | TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved,

Case No.:  37-2022-00044468-CU-MC-CTL

15 |         Plaintiff,

**CLASS ACTION**

16 | v.

Assigned for All Purposes to:
Judge Ronald F. Frazier
Department C-65

17 |

18 | LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL MEDIA LIMITED; and DOES 1 to 50, inclusive,

(*CIVIL UNLIMITED MATTER*)
IMAGE FILE—Civil Unlimited
(Mandatory eFILE Case)

19 |

20 |         Defendants.

**[PROPOSED] ORDER GRANTING PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CASE MANAGEMENT CONFERENCE**

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1    The Court has read and considered Plaintiff's Ex Parte Request for Continuance of the Initial

2 Case Management Conference.

3    Good cause appearing, IT IS ORDERED that:

4    The initial Case Management Conference is hereby continued by sixty (60) days. Therefore,

5 the initial Case Management Conference is set for _____.

6    **IT IS SO ORDERED.**

7

8    Dated: _____          _____

9                                                              THE HONORABLE RONALD F. FRAZIER
                                                                   SUPERIOR COURT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **CROSNER LEGAL, P.C.**
2 | Michael R. Crosner (SBN 41299)
   | Zachary M. Crosner (SBN 272295)
3 | Chad A. Saunders (SBN 257810)
   | Craig W. Straub (SBN 249032)
4 | 9440 Santa Monica Blvd. Suite 301
   | Beverly Hills, CA 90210
5 | Tel: (310) 496-5818
   | Fax: (310) 510-6429
6 | mike@crosnerlegal.com
   | zach@crosnerlegal.com
7 | chad@crosnerlegal.com
   | craig@crosnerlegal.com
8 |
9 | Attorneys for Plaintiff
10 | [Additional Counsel Appear on Signature Page]

11 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 | **COUNTY OF SAN DIEGO**

| | |
|---|---|
| TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved, | Case No.:  37-2022-00044468-CU-MC-CTL |
| Plaintiff, | **CLASS ACTION** |
| v. | Assigned for All Purposes to: Judge Ronald F. Frazier Department C-65 |
| LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL MEDIA LIMITED; and DOES 1 to 50, inclusive, | (*CIVIL UNLIMITED MATTER*) IMAGE FILE—Civil Unlimited (Mandatory eFILE Case) |
| Defendants. | **PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CASE MANAGEMENT CONFERENCE** |
| | CMC Date:    December 22, 2022 Time:          10:15 a.m. Judge:        Hon. Ronald F. Frazier Dept:          C-65 |
| | **JURY TRIAL DEMANDED** |

PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CMC

1    Pursuant to Local Rule 2.1.9, Plaintiff Trevor Davenport ("Plaintiff") hereby respectfully

2  request a sixty (60) day continuance of the Initial Case Management Conference ("CMC"), which

3  is currently scheduled to be held on December 22, 2022, at 10:15 a.m. The Declaration of Craig W.

4  Straub ("Straub Decl.") in support of this request is filed concurrently. Defendants have represented

5  that they do not object to the relief requested.

6    Good cause exists to continue the initial CMC because (1) Defendants have not answered or

7  otherwise responded to the complaint (*see* L.R. 2.1.p "The court expects . . . all answers filed or

8  defaults entered by the time of the initial Case Management Conference), (2) the parties are and

9  have been discussing settlement options, and (3) Plaintiff's counsel will be out of the country during

10  the scheduled CMC. Straub Decl., ¶ 2.

11

12  Dated: December 7, 2022                    CROSNER LEGAL, P.C.

13                                             By:        */s/ Craig W. Straub*

14                                                    CRAIG W. STRAUB

15                                             Michael R. Crosner (SBN 41299)
                                               Zachary M. Crosner (SBN 272295)
16                                             Chad A. Saunders (SBN 257810)
                                               Craig W. Straub (SBN 249032)
17                                             9440 Santa Monica Blvd. Suite 301
                                               Beverly Hills, CA 90210
18                                             Tel: (310) 496-5818
                                               Fax: (310) 510-6429
19                                             mike@crosnerlegal.com
                                               zach@crosnerlegal.com
20                                             chad@crosnerlegal.com
                                               craig@crosnerlegal.com
21
                                               LAW OFFICE OF TODD M. FRIEDMAN, P.C.
22                                             Todd M. Friedman (SBN 216752)
                                               21550 Oxnard St. Suite 780,
23                                             Woodland Hills, CA 91367
                                               Phone: 323-306-4234
24                                             Fax: 866-633-0228
                                               tfriedman@toddflaw.com
25
                                               *Attorneys for Plaintiff*
26

27

28

Case No.:  37-2022-00044468-CU-MC-CTL      2
PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
*Trevor Davenport v. Formula One*
*Superior Court County of San Diego Case No. 37-2022-00044468-CU-MC-CTL*

     At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California. My business address is 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210.

On  December 07, 2022,  I served true copies of the following document(s) described as

     **PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CASE MANAGEMENT CONFERENCE**

     **DECLARATION OF CRAIG W. STRAUB IN SUPPORT OF PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CASE MANAGEMENT CONFERENCE**

     **[PROPOSED] ORDER GRANTING PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CASE MANAGEMENT CONFERENCE**

<u>SEE ATTACHED SERVICE LIST</u>

on the interested parties in this action as follows:

**___**    BY EMAIL OR ELECTRONIC TRANSMISSION.  Based on an agreement of the parties to accept service by email or electronic transmission, I caused the document(s) to be sent from agutierrez@crosnerlegal.com  to the person(s) at the email addresses listed in the service list.  The email or electronic transmission was sent on the date below.

**___**    BY FACSIMILE TRANSMISSION. I transmitted copies of the above-referenced document(s) on the interested parties in this action by facsimile transmission from (310) 510-6429.  A transmission report was properly issued by the transmitting facsimile machine and the transmission was reported as complete and without error.

**XX**    BY UNITED STATES POSTAL SERVICE.  I enclosed the documents in electronic pdf format and submitted them electronically into the mail provider, Letterstream, Inc.'s, online mail portal (letterstream.com) to be mailed addressed to the entities and/or persons listed in the Service List as set forth herein. I caused an envelope containing the documents to be placed for collection and mailing and to be mailed by First Class Mail, following our law firm and Letterstream, Inc.'s ordinary business practices. I am readily familiar with our business practices and the business practices of Letterstream, Inc. for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. Pursuant to that practice, the above-referenced document(s) were sealed in an envelope, with postage paid, and deposited with a a post office, mail box, sub-post office, substation, mail chute, or other facility or postal pick up/drop off regularly maintained by the United States Postal Service or an affiliate thereof, at or near Phoenix, Arizona.

PROOF OF SERVICE

1

1    I declare under penalty of perjury under the laws of the United States of America that the foregoing
2    is true and correct and that I am employed in the office of a member of the bar of this Court at
     whose direction the service was made.
3
4    Executed on December 07, 2022, at Los Angeles, California.
5
6                                              *Ashley Gutierrez*
                                               Ashley Gutierrez
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**
*Trevor Davenport v. Formula One*
*Superior Court County of San Diego Case No. 37-2022-00044468-CU-MC-CTL*

Rachel Lowe, Esq.
Kathy Huang, Esq.
Alston & Bird LLP
333 S Hope St, Fl 16
Los Angeles, CA 90071-1410
Phone: 213-576-1000 | Fax:
213-576-1100
Email: rachel.lowe@alston.com
kathy.huang@alston.com

**Attorneys for Defendants**

LIBERTY MEDIA CORPORATON ET AL.

PROOF OF SERVICE

3

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
mike@crosnerlegal.com
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

Attorneys for Plaintiff

[Additional Counsel Appear on Signature Page]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

| | |
|---|---|
| TREVOR DAVENPORT, on behalf of himself and all others similarly situated and aggrieved,<br><br>      Plaintiff,<br><br>v.<br><br>LIBERTY MEDIA CORPORATION, a Delaware corporation; FORMULA ONE GROUP; FORMULA ONE DIGITAL MEDIA LIMITED; and DOES 1 to 50, inclusive,<br><br>      Defendants. | Case No.:  37-2022-00044468-CU-MC-CTL<br><br>**CLASS ACTION**<br><br>Assigned for All Purposes to:<br>Judge Ronald F. Frazier<br>Department C-65<br><br>(*CIVIL UNLIMITED MATTER*)<br>IMAGE FILE—Civil Unlimited<br>(Mandatory eFILE Case)<br><br>**DECLARATION OF CRAIG W. STRAUB IN SUPPORT OF PLAINTIFF'S EX PARTE REQUEST FOR CONTINUANCE OF INITIAL CASE MANAGEMENT CONFERENCE**<br><br>CMC Date:    December 22, 2022<br>Time:          10:15 a.m.<br>Judge:         Hon. Ronald F. Frazier<br>Dept:          C-65<br><br>**JURY TRIAL DEMANDED** |

Case No.:  37-2022-00044468-CU-MC-CTL        1
DECLARATION OF CRAIG W. STRAUB IN SUPPORT OF EX PARTE REQUEST

1    I, CRAIG W. STRAUB, declare as follows:

2    1.    I am an attorney duly licensed to practice before all of the courts of the State of

3  California. I am an attorney at the law firm of Crosner Legal, P.C., one of the counsel of record for

4  Plaintiff in the above-entitled action.

5    2.    I make this declaration in support of Plaintiff's Ex Parte Request to Continue the

6  initial Case Management Conference by sixty (60) days.

7    3.    Good cause exists to continue the initial Case Management Conference ("CMC")

8  because (1) Defendants have not answered or otherwise responded to the complaint , (2) the parties

9  are and have been discussing settlement options, and (3) Plaintiff's counsel who planned on

10  attending the CMC as the lead attorney will be out of the country during the scheduled CMC.

11    I declare under penalty of perjury under the laws of the State of California that the foregoing

12  is true and correct. Executed December 7, 2022, at San Diego, California.

13

14                                            */s/  Craig W. Straub*
                                              CRAIG W. STRAUB

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.:  37-2022-00044468-CU-MC-CTL     2
DECLARATION OF CRAIG W. STRAUB IN SUPPORT OF EX PARTE REQUEST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

I, Nora Fernandez, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California, 90071.

On March 15, 2023, I served the document(s) described as **DEFENDANTS LIBERTY MEDIA CORPORATION, FORMULA ONE GROUP, AND FORMULA ONE DIGITAL MEDIA LIMITED'S NOTICE OF REMOVAL** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:  SEE ATTACHED SERVICE LIST

☒    BY MAIL:  I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California, 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm.  Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California, 90071.

☐    ☐ UPS NEXT DAY AIR    ☐ FEDERAL EXPRESS    ☐ OVERNIGHT DELIVERY:  I deposited such envelope in a facility regularly maintained by ☐ UPS  ☐ FEDERAL EXPRESS  ☐ OVERNIGHT DELIVERY [specify name of service: _____] with delivery fees fully provided for or delivered the envelope to a courier or driver of  ☐ UPS   ☐ FEDERAL EXPRESS   ☐ OVERNIGHT DELIVERY [specify name of service: _____] authorized to receive documents at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California, 90071 with delivery fees fully provided for.

☒    BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT:  On this date, I transmitted the above-mentioned document(s) by electronic mail transmission with attachment to the parties at the electronic mail address set forth on the attached Service List.

☐    [State]      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    [Federal]    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 15, 2023, at Los Angeles, California.

_____
Nora Fernandez

1

*Trevor Davenport v. Liberty Media Corporation, et al.*

2

———————

3

## **SERVICE LIST**

4

Michael R. Crosner                              *Attorneys for Plaintiff*
5
Zachary M. Crosner                              TREVOR DAVENPORT
Chad A. Saunders
6
Craig W. Straub                                 Telephone: (310) 496-5818
**CROSNER LEGAL, P.C.**                         Facsimile: (310) 510-6429
7
9440 Santa Monica Blvd., Suite 301              Email: mike@crosnerlegal.com
Beverly Hills, CA 90210                         zach@crosnerlegal.com
8
                                                chad@crosnerlegal.com
                                                craig@crsonerlegal.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE